IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION


BUD OWEN WILLIAMS                                    PLAINTIFF

VS.                        CIVIL ACTION NO. 5:05-cv-34(DCB)(JMR)

CITY OF FAYETTE, MISSISSIPPI,
and ROGERS KING, in his individual capacity          DEFENDANT


MEMORANDUM OPINION AND ORDER

This cause is before the Court on the defendants City of
Fayette ("the City") and Mayor Rogers King, in his individual
capacity ("Mayor King")'s motion for summary judgment **(docket entry
70)**.  Having carefully considered the motion and response, the
parties' memoranda and the applicable law, and being fully advised
in the premises, the Court finds as follows:

In February of 2002, the plaintiff, Bud Owen Williams
("Williams"), was hired as Chief of Police for the City of Fayette,
Mississippi, by Mayor King and the Board of Aldermen.  Deposition
of Bud Owen Williams, p. 36.  In 2002, Williams solicited the aid
of the Mississippi Bureau of Narcotics ("MBN") and a confidential
informant ("CI") to address drug activity in the city.  The CI
accused several persons of selling unlawful substances to him,
including Mayor King's son, Keith Tyler.  Williams Depo., pp. 66-
70.  Keith Tyler was indicted on January 9, 2004, and subsequently
arrested.  Williams Depo., pp. 76-77.

The plaintiff claims that in late June or early July of 2004,
he had a brief conversation with Mayor King during which the Mayor

said, "Chief, I heard that you paid them guys some money to set those guys up." Williams Depo., p. 78.  The plaintiff claims that he responded, "There ain't no truth to that," to which Mayor King replied, "Okay.  We'll see."  Williams Depo., pp. 78-79.

The charges against the Mayor's son and various others were ultimately dismissed.  Williams Depo., p. 79.  According to the plaintiff, the charges were dismissed because the CI had proven to be unreliable and had, in fact, recanted his testimony.  Williams Depo., pp. 79-80.

At a personnel meeting in August of 2004, Mayor King recommended terminating Chief Williams and Samuel Johnson, the City's Public Works Director, for budgetary reasons.  Williams Depo., p. 89; Minutes of Personnel Meeting, Aug. 20, 2004.  On August 24, 2004, the Board of Aldermen held a special meeting to address the Mayor's recommendation for the lay-off of Chief Williams and Mr. Johnson.  At the meeting, both Williams and Johnson were terminated by the Board, as were Kimberly Scott, the City Planner, and Ray White, the Fire Chief.  Minutes of Board Meeting, Aug. 24, 2004.  The plaintiff received a letter informing him that he was laid off along with the other City employees because of the City's inability to pay their salaries.  Williams Depo., pp. 123-124; Termination Letter, Aug. 25, 2004.

The plaintiff appeared at the September 7, 2004, Board meeting seeking reinstatement.  At the meeting, he informed the Board that

2

he believed he was terminated due to his involvement in the arrest of the Mayor's son.   Williams Depo., pp. 126-29.   The Board maintained that the lay-off was entirely for budgetary reasons, and that none of the Aldermen had any knowledge of Williams' involvement in a drug bust involving the Mayor's son.   Deposition of Alderman Clark, p. 33; Williams Depo., pp. 141-44.

The plaintiff brings this action under 42 U.S.C. § 1983 for the alleged violations of his First Amendment rights to freedom of speech and freedom of association, and his Fourteenth Amendment rights to equal protection and substantive due process.   He also asserts state law claims against the defendants for malicious interference with his employment and unlawful termination, and seeks punitive damages.   The defendants move for summary judgment on the plaintiff's federal law claims and for the Court to exercise its discretion to decline to entertain supplemental jurisdiction over the plaintiff's state law claims, or, in the alternative, for summary judgment on the plaintiff's state law claims as well.

A motion for summary judgment is appropriately granted when the moving party demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(c).   The moving party has the initial burden of identifying relevant portions of the record, including  the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, which it believes demonstrate

3

the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  A contested fact is "material" when it has the potential to change the outcome of the case.  Ginsburg 1985 Real Estate P'ship v. Cadle Co., 39 F.3d 528, 531 (5th Cir. 1994)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  An issue is "genuine" if "the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party."  Id.

If the moving party sustains its burden, the burden shifts to the nonmoving party to show with "significant probative evidence" that a genuine issue as to a material fact actually exists.  Conkling v. Turner, 18 F.3d 1285, 1295 (5th Cir. 1994).  To overcome summary judgment, the nonmoving party must do more than simply rely on the pleadings or merely rest "upon conclusory allegations, improbable inferences, and unsupported speculation."  Krim v. BancTexas Group, Inc., 989 F.2d 1435, 1449 (5th Cir. 1993).  The non-movant must "designate specific facts showing the existence of a genuine issue for trial."  Anderson, 477 U.S. at 250.  "The mere existence of a scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment."  Id. at 252.  Moreover, the nonmoving party must make a showing sufficient to establish the existence of an essential element of its case, an element on which it will bear the burden of proof at trial.  Celotex, 477 U.S. at 322.

In light of the facts presented by the nonmoving party, along with any undisputed facts, this Court must decide whether the moving party is entitled to judgment as a matter of law. When deciding a motion for summary judgment, the evidence submitted by the nonmoving party is presumed valid, and all reasonable inferences that may be drawn from that evidence must be drawn in favor of the party opposing summary judgment. Anderson, 477 U.S. at 255. The district court, therefore, must not "resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." Kennett-Murray Corp. v. Bone, 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is improper where the court merely believes it unlikely that the non-movant will prevail at trial. National Screen Serv. Corp. v. Poster Exchange, Inc., 305 F.2d 647, 651 (5th Cir. 1962). By contrast, summary judgment for the moving party is only proper when a rational jury, looking at the record as a whole, could not find for the nonmoving party. Matshushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**I. Freedom of Speech**

The First Amendment does not protect a government employee from discipline based on speech made pursuant to the employee's official duties. Garcetti v. Ceballos, 126 S.Ct. 1951, 1961 (2006). The plaintiff asserts that "[b]y contacting the MBN and contacting the CI, Plaintiff was exercising his freedom of speech."

5

Complaint, ¶ XII.  The plaintiff admits that he talked with the MBN and CI in his capacity as Police Chief, and that the information they shared was not for dissemination to the general public. Williams Depo., pp. 140-41.  Thus, Williams was not speaking as a citizen, and his speech cannot be said to involve a matter of public concern for First Amendment purposes.  <u>Garcetti</u>, 126 S.Ct. at 1961.

## II. Freedom of Association

The First Amendment does not contain a "generalized right of social association."  <u>City of Dallas v. Stranglin</u>, 490 U.S. 19, 25 (1989).  Rather, the First Amendment encompasses (1) intimate association and (2) expressive association.  <u>Id</u> at 23-25.  The right of "expressive association" protects the rights of individuals to associate "for the purpose of engaging in those activities protected by the First Amendment – speech, assembly, petition for the redress of grievances, and exercise of religion." <u>Id</u>. at 24-25.  The plaintiff's rights to freedom of speech were not violated for the reasons discussed above, and none of the remaining "expressive association" rights are at issue here.

The right of "intimate association" or "private association" protects against "unjustified government interference with an individual's right to enter into and maintain certain human relationships, and is protected as an element of personal liberty." <u>Id</u>. at 24.  The relationships to which courts have extended this

protection are those which presuppose "deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life," and include marriage, the bearing of children, child rearing and education, and living with relatives.  Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1051-52 (5th Cir. 1996)(citing Brd. Of Directors of Rotary Int'l v. Rotary Club of Duarte, 481 U.S. 537, 545 (1987)).  In this case, the plaintiff alleges his termination resulted from his association with others involved in law enforcement, namely the MBN and the CI.  In Henrise v. Horvach, 45 Fed.Appx. 323 (5th Cir. 2002), the Fifth Circuit found that "despite [plaintiff's] attempt to cast police officers' friendships as special and unique, those friendships still are not the type of intimate human relationship that demand protection as a 'fundamental element of human liberty.'"  Id. at *6.  The plaintiff's relationships with the MBN and the CI do not meet the requirements of a First Amendment intimate association claim.

**III. Equal Protection**

"[T]o state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class."  Whiting v. Tunica County, 222 F.Supp.2d 809, 824 (N.D. Miss. 2002).  The plaintiff is African-American, as are Mayor

King and the entire Board of Aldermen.  The plaintiff has failed to show how his identification with any class supports his equal protection claim.  Instead, the plaintiff claims the status of a "class of one."  The Supreme Court has held that an equal protection claim may be "brought by a 'class of one' where the plaintiff [shows] that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  <u>Vill. Of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000).  In <u>Nance v. New Orleans and Baton Rouge Steamship Pilots' Assoc.</u>, 174 Fed.Appx. 849 (5th Cir. 2006), the Fifth Circuit stated:

> This requires a plaintiff to show standards were applied differently to him than to others <u>similarly situated</u>. <u>Bryan v. City of Madison</u>, 213 F.3d 267, 276–77 (5th Cir. 2000), <u>cert. denied</u>, 531 U.S. 1145, 121 S.Ct. 1081, 148 L.Ed.2d 957 (2001).  Alternatively, the plaintiff may show that a government policy or procedure was selectively enforced against him.  <u>Id</u>. At 277.  This requires showing "the government officials acts were motivated by improper considerations, such as race, religion, or the desire to prevent the exercise of a constitutional right."  <u>Id</u>.

<u>Id</u>. At *5.  In <u>Nance</u>, the Fifth Circuit questioned "whether this 'class of one' jurisprudence applies outside the zoning land use and assessment context, where it is typically employed."  <u>Id</u>. (citing <u>Shipp v. McMahon</u>, 54 Fed.Appx. 413 (5th Cir. 2002)). However, the appellate court held that it did not need to determine whether the "class of one" doctrine applied in the plaintiff's case "because Nance's summary judgment evidence fails to demonstrate an

equal protection violation. ... Instead, he merely makes unsubstantiated, vague assertions that he and unspecified others received unequal treatment." Id. Like the plaintiff in Nance, Williams has failed to show that others were both similarly situated and treated differently. Furthermore, he is attempting to base his equal protection claim on personal vindictiveness without any type of class-based discrimination, an argument that has not been expressly adopted by the Fifth Circuit. See Bell v. South Delta Sch. Dist., 325 F.Supp.2d 728, 742 (S.D. Miss. 2004); Bryan, 213 F.3d at 277 n.18.

## IV. Due Process

In order to allege a violation of his due process rights, the plaintiff must first establish that he has suffered a deprivation of a constitutionally protected liberty or property interest. Board of Regents v. Roth, 408 U.S. 564, 570-71 (1972). In his complaint, Williams alleges that he had a constitutionally protected property interest in continued employment with the City. Federal courts look to state law to determine whether a property interest exists in a person's employment. Lollar v. Baker, 196 F.3d 603, 606 (5th Cir. 1999). Under Mississippi law, absent a contract to the contrary, a person's employment is terminable at will. Miss. Code Ann. § 21-3-5 (1999); Harrison Co. Sch. Brd. v. Morreale, 538 So.2d 1196, 1200 (Miss. 1989). In this case, the plaintiff admits that he did not have a written employment

9

contract.  Williams Depo., p. 147.  He asserts that the City of Fayette's employee handbook and/or a mutual understanding with the City created a protected property interest in his employment, but fails to demonstrate that the manual or other representations by the City modified his at-will employment status.  See Starks v. City of Fayette, 911 So.2d 1030 (Miss. App. 2005)(police officer discharged by the City of Fayette did not have a property interest in continued employment; "[n]othing in the [employee] manual indicates that it was designed to adjust the at-will status of employees").  Inasmuch as the plaintiff cannot demonstrate the existence of an entitlement to continued employment as Chief of Police, his substantive due process claim fails as a matter of law.

**V. State Law Claims**

In deciding whether to exercise supplemental jurisdiction over the plaintiff's state law claims, the Court is guided by 28 U.S.C. § 1367, which gives federal courts jurisdiction over state law claims in limited circumstances:

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).  Section 1367(c)(3) provides that a district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... the district court has dismissed

10

all claims over which it has original jurisdiction." As the commentary to section 1367(c)(3) explains:

> the idea here is that once the crutch is removed – the claim that supports the supplemental jurisdiction of the other claim or claims – the other should not remain for adjudication ... .

28 U.S.C. § 1367 Practice Commentary (West Supp. 1993). District courts enjoy wide discretion in determining whether to retain supplemental jurisdiction over state claims once all federal claims are dismissed. Noble v. White, 996 F.2d 797, 799 (5th Cir. 1993). In fact, the Fifth Circuit's "general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed." Parker & Parsley Petroleum v. Dresser Industries, 972 F.2d 580, 585 (5th Cir. 1992)(citing Wong v. Stripling, 881 F.2d 200, 204 (5th Cir. 1989)); see also Rhyne v. Henderson County, 973 F.2d 386, 395 (5th Cir. 1992).

The Court is guided by the considerations of "judicial economy, convenience, fairness and comity." Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988). In United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966), the Supreme Court emphasized that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of the applicable law."

Because there exists no independent basis of federal jurisdiction, and in the interest of comity, judicial economy, convenience, and fairness to the litigants, the Court exercises its

11

discretion pursuant to 28 U.S.C. § 1367 and declines to exercise supplemental jurisdiction over the plaintiff's state law claims.

Nothing in this opinion should be construed as a comment on the merits of the plaintiff's state law claims.  States may recognize positive duties of care and make the breach of those duties tortious; however, the only duties of care that may be enforced in suits under § 1983 are duties found in the Constitution or laws of the United States.  Accordingly,

IT IS HEREBY ORDERED that the defendants City of Fayette and Mayor Rogers King's motion for summary judgment **(docket entry 70)** is GRANTED as to all federal claims;

FURTHER ORDERED that the Court declines to exercise supplemental jurisdiction over the state law claims, and they shall be dismissed without prejudice.

A separate Final Judgment in accordance with Fed.R.Civ.P. 58 shall follow.

SO ORDERED, this the 11th day of September, 2006.

                                    S/DAVID BRAMLETTE
                                    UNITED STATES DISTRICT JUDGE

12